320

United States Fidelity and Guaranty Company, Appellant, v. Albert Sabath, Appellee.

Gen. No. 38,410.

Opinion filed July 3, 1936. Rehearing denied July 14, 1936.

WILLIAM J. FLAHERTY, of Chicago, for appellant; GEORGE H. MASON and DONALD H. HAIDER, both of Chicago, of counsel.

CHARLES HUDSON, of Chicago, for appellee.

Mr. Justice Scanlan delivered the opinion of the court.

An appeal from a judgment, entered upon a finding by the court, in favor of defendant and against plaintiff for costs.

The special count of plaintiff's amended declaration alleges, in substance, that on January 17, 1928, an attachment suit was pending in the circuit court of the City of St. Louis, Missouri, in which Samuel Stores, Inc. was plaintiff and Millard's, Inc. was defendant; that certain goods of Millard's, Inc. had been seized by the sheriff under an attachment writ issued in the suit and to regain possession of the goods it was necessary that Millard's, Inc. give bond in the sum of $8,500, with surety satisfactory to the sheriff, conditioned upon the forthcoming of the property, etc.; that on the said day Millard's, Inc. made application in writing to plaintiff to become surety on such a bond, and attached to the application was an indemnity agreement, signed by defendant; that in conformity with the application and in consideration of the indemnity agreement (both set out verbatim) and a premium paid, plaintiff, on January 18, 1928, executed, as surety, a forthcoming bond of Millard's, Inc. of that date, which was delivered to the sheriff, accepted by him, and the goods of Millard's, Inc. were returned to it under the conditions of the bond (the bond is here set forth verbatim); that on April 24, 1930, a judgment was rendered in favor of Samuel Stores, Inc. and against Millard's, Inc. for $3,710.72 and costs; that sections 1297 and 1327 of the Revised Statutes of Missouri (set up verbatim) were then in force; that Millard's, Inc. did not return the goods to the sheriff, the same were not forthcoming, and the judgment remained unsatisfied; that the value of the goods was at all times greater than the amount of the judgment; that by means of the premises, plaintiff became liable on its

bond to pay the judgment, together with 20 per cent of the judgment as damages; that afterward an execution issued on the judgment and was delivered to the sheriff, and the personal property not being forthcoming, plaintiff became liable to pay Samuel Stores, Inc. the amount due upon the execution with interest from April 24, 1930; that at the instance and request of defendant, plaintiff paid $3,350 to Samuel Stores, Inc., for an assignment of the judgment. Defendant pleaded the general issue and filed therewith an affidavit of merits. The material parts of the affidavit are as follows:

"That he verily believes that he has a good and substantial defense to all the plaintiff's claims *except the sum of $20.00 and costs.*

". . . That the nature of his defense is that the bond set forth in plaintiff's declaration and upon which said claim is based was not given to secure the payment of such judgment as should be rendered in the cause therein mentioned in St. Louis, but only for the forthcoming of the property released and for the payment of costs, but not of the principal of said judgment; that the plaintiff, as surety, did not on said bond become liable to pay the said judgment of $3,710.72, interest and costs, to the said Samuel Stores, Inc., as alleged in said declaration, and was not obliged to and did not pay or satisfy the same, but if it paid the said Samuel Stores, Inc., the sum of $3,350.00 and in consideration thereof received a duly executed assignment of said judgment, it paid said sum and received said assignment of its own volition and without any compulsion or legal liability thereto as a purchase of the judgment and not otherwise; that, although the said defendant Millard's was insolvent and a bankrupt, its estate was valuable and paid out twenty cents

on the dollar; that the personal property originally attached was taken in said bankrupt proceedings by order of the Court by the Trustee in Bankruptcy; that the laws of Missouri require that when forthcoming bonds are given for the release of property seized on attachment, it is necessary in order to fix a liability on the bondsman that the Court direct the officer to assign to the plaintiff the bonds taken by him for the forthcoming of the property attached; appraise the value of the property; and, thereupon on motion, render judgment in favor of the plaintiff against the obligors on the bond for the value of such property; but this affiant says that in the present case, no such order was entered by the Court; no such appraisement was made *and no liability attached to the present plaintiff* except as to costs; and that defendant did not become liable to pay the plaintiff therefor, as alleged in Count I in said declaration.'' (Italics ours.)

The application for the bond and defendant's indemnity agreement were drawn on one sheet of paper, and it is agreed that they must be construed together. Their material parts are as follows:

''APPLICATION TO BE USED FOR

| | |
|---|---|
| Appeal or Supersedeas | Costs |
| *Attachment* or Garnishment | Removal |
| *Release Attachment* or Garnishment | Injunction |
| | Dissolve Injunction |
| Replevin | Libel |
| Counter Replevin | Release Libel or Stipu- |
| Intervening Claimant's | lation for Value |
| Indemnity to Sheriff or Marshal | Bail |

AND OTHER BONDS

324

"United States Fidelity and Guaranty Company
Baltimore, Maryland

"1. Name of Applicant Millards, Inc.
2. Occupation Retail Clothing Stores
3. Address 110 S. Dearborn St. Chicago
4. *Nature of Bond applied for* *Release Attachment*
5. Penalty $8500.00
6. Title of case The Samuel Stores, Inc. vs.
 Applicant
7. Court in which filed Circuit Court
 City of St. Louis
 Case #125164

. . .

"Signed, Sealed, and Delivered this 17th day of January 1928.
"Witness: Victor E. Krajci
 "Millards, Inc. (Seal)
 By Lawrence Neumann (Seal)
 V. P.

"Indemnity Agreement

"The Undersigned Hereby Agrees to Indemnify and keep the United States Fidelity and Guaranty Company indemnified and to hold and save it harmless from and against any and all demands, liabilities, charges and expenses of whatever kind or nature, which it may at any time sustain or incur by reason or in consequence of its having executed *the above described bond.* And thereto he agrees to waive, and does hereby waive, any right to claim any property, including homestead, as exempt, under the constitution or law of any state or states, from levy, execution, sale or other legal process.

"And Further, He Guarantees that the premium on the bond will be paid as above agreed.

"Signed, Sealed, and Delivered this 17th day of January 1928.

"Witness: Victor E. Krajci

"Julius N. Heldman (Seal)
"Albert Sabath (Seal)
"Lawrence Neumann (Seal)"

(Italics ours.)

The facts are not disputed and plaintiff's evidence sustained the material allegations of fact alleged in the said special count. Defendant offered no evidence, but his able and ingenious lawyer argued to the trial court that the words in the application, "Nature of Bond applied for Release Attachment," contemplate a dissolution bond only; that defendant, in the indemnity agreement, agreed to become indemnitor on "the above described bond," and that as plaintiff furnished a forthcoming bond defendant is not liable under the indemnity agreement. The trial court stated in his opinion that the question involved in defendant's contention was not free from doubt, but that it was his duty, under the law, to resolve the doubt in favor of nonliability, and he sustained the contention and the finding and judgment were based upon that ruling.

Lawrence Neumann was the vice president of Millard's, Inc. Albert Sabath (defendant) and Julius N. Heldman were lawyers, practicing at the Chicago bar. Defendant testified that he "was a very close, personal friend of Mr. Lawrence Newman [Neumann], who was the head of the company," and that he signed the indemnity agreement at the latter's request; that he acted as attorney for Millard's, Inc. "in some matters," but that Heldman "represented them in most of their business"; that he (defendant) was an officer of Millard's, Inc. "as a matter of friendship for Mr.

Newman [Neumann]." During his examination the following occurred: "The Court: You were not a stockholder of Millard's, Incorporated? A. I think not. Now, I would not say. I think not. If it was, it was only a qualifying interest, if anything." Heldman, who did not testify, appears to have had charge of the legal proceedings relating to the forthcoming bond. Defendant testified that Victor E. Krajci had officed with him for 20 years, "is still there"; and that part of his business was insurance. Krajci wrote in the answers to the questions in the application, one of which answers was, "Release Attachment," witnessed the signing of the application by Neumann (acting for Millard's, Inc.), and also witnessed the signatures of Heldman, Neumann and defendant to the indemnity agreement. Defendant also testified that it was his best recollection that Krajci brought the application and indemnity agreement to him and asked him to sign the indemnity agreement; that Krajci may have represented him in the negotiations for a settlement between plaintiff and Samuel Stores, Inc. Defendant did not see fit to call Krajci as a witness.

Plaintiff strenuously contends that "the defendant was precluded by his affidavit of defense from urging the defense upon which the trial court found in his favor." If that point was raised in the trial, undoubtedly, there would be merit in this contention. Defendant argues that "the sufficiency of defendant's affidavit of merits was not questioned in the court below and that question cannot be raised for the first time in the Appellate Court." The contention of defendant's counsel was based solely upon his interpretation of the words "Release Attachment." Defendant did not testify to any facts or circumstances tending to support that interpretation, and for aught that appears in his testimony he may have seen the bond furnished by plaintiff before it was tendered to the

sheriff. Indeed, the only reasonable conclusion to be drawn from all the facts and circumstances is that he did. The arguments of counsel are not preserved in the transcript of the evidence and we cannot tell from the record before us whether plaintiff's counsel made objection to the defense raised. The opinion of the trial court is incorporated in the transcript, but we find nothing therein to indicate that plaintiff had interposed the objection it now urges. It would, therefore, be unfair to the trial court to hold that he erred in considering such defense. However, from a study of the entire record one thing is clear, and that is that the defense was an afterthought, a *dernier ressort*. In the affidavit of merits, filed nearly six years after the signing of the indemnity agreement, defendant, a lawyer, admitted, under oath, a liability to plaintiff on his indemnity agreement, for $20 and costs. That admission amounts to an acknowledgment that the bond given was the one contemplated by his indemnity agreement and that he was liable as indemnitor. His defense, as stated in his affidavit of merits, was not that the indemnity agreement did not cover the forthcoming bond, but that under the bond given by plaintiff, as surety, the latter was not liable to pay the judgment, but only the costs of the attachment suit, because Samuel Stores, Inc., in the proceeding in the St. Louis court, had not complied with certain conditions imposed by the Missouri statutes. As plaintiff argues: "The defense stated, therefore, went wholly to the legal operation of the bond given, and did not dispute, but admitted, that the bond given was described in and covered by the defendant's agreement of indemnity." Undoubtedly, the contention of plaintiff that the affidavit of merits must be considered as an admission, under oath, by defendant, is a meritorious one. The following also indicates that defendant intended to indemnify plaintiff for the giving of a forthcoming bond:

Negotiations were conducted to compromise plaintiff's liability on the bond to Samuel Stores, Inc. which resulted, about September 24, 1930, in the assignment to plaintiff of the judgment in the attachment suit upon the payment by the latter to Samuel Stores, Inc. of $3,350. During the negotiations plaintiff sent the following letter to defendant:

"June 30, 1930

"REGISTERED MAIL
RETURN RECEIPT REQUESTED

"Mr. Albert Sabath, Attorney,
110 South Dearborn Street,
Chicago, Illinois.

"Dear Sir:
 "RE: Claim—Millard's Inc.,—Local 18569
 Samuel Stores, Inc.,
 "On or about the 18th day of January, 1928 at your special instance and request, we executed in behalf of Millard's Inc., and in favor of Samuel Stores, Inc., an Attachment bond in the penalty of $8500.00. At the time of the execution of this bond you agreed among other things to indemnify and to hold and save the undersigned harmless, from and against any and all demands, liabilities, charges and expense of whatever kind or nature, which it may at any time sustain or incur by reason or in consequence of its having executed the above described bond.

 "We are now in receipt of advices that a judgment was rendered in favor of Samuel Stores, Inc., on April 21st, 1930 in the amount of $3700.00 with interest at 6% from the given date, and court costs amounting to $81.30, or a total, up to and including today of $3823.87.

 "We are bringing this matter to your attention so that you may advise us what action you intend to take in the premises, as the attorney for Samuel Stores, Inc., is threatening to have execution issued at once.

"Please acknowledge receipt of this letter and advise me what your intentions are in the premises."
Defendant did not answer that letter, but he took part in the negotiations for settlement and approved the one made. On September 22, 1930, he addressed to "Samuel Stores, Inc. and Tinsman & Blocki, their attorneys," the following letter:

*"In connection with the assignment from Samuel Stores, Inc. to United States Fidelity & Guaranty Company of a judgment for $3700.00 rendered April 21, 1930, in the Circuit Court of the City of St. Louis, Missouri, in suit #125164, in favor of Samuels Stores, Inc. and against Millard's, Inc.,* it is my understanding and agreement that no writ of error, or appeal, will be prosecuted from said judgment; and, as a part of said assignment which is in substance a settlement as between ourselves, I undertake to indemnify you against all claims or demands whatsoever which may hereafter be made against you by virtue of any writ of error, or appeal, which may be prosecuted from said judgment and I also agree to indemnify you against any claim or demand which may hereafter be made against you by virtue of the attachment bond which was filed by you in said cause.

"Albert Sabath (Seal)"

(Italics ours.)

Defendant wrote that letter because Samuel Stores, Inc. and its attorneys were unwilling to make an assignment of the judgment to plaintiff unless defendant "agreed to it or consented to it." Mr. Hudson, counsel for defendant in the instant case, and an office associate of the latter for many years, represented Millard's, Inc. in the attachment suit in the circuit court of the City of St. Louis, Missouri.

In the instant case defendant was forced to interpose the anomalous defense that the indemnity agreement contemplated that plaintiff should furnish the

more onerous bond only. The statutes of Missouri (sections 1297 and 1321, Missouri R. S. 1929) provide two types of bonds by which a defendant may regain possession of his property seized under attachment. Section 1297 is entitled, ''Attached Property Retained By Defendant Before Judgment Or Sale—Bond, Conditions, etc.,'' and provides for a bond to the sheriff, to his satisfaction, in double the value of the property, conditioned upon the forthcoming of the property, etc. Section 1321 is entitled, ''Attachments, How Dissolved,'' and provides for a bond to the plaintiff, to be approved by the court, in double the amount of the plaintiff's claim, and is conditioned for the payment of any judgment which may be rendered in the suit. Sections 14 and 15 of our Attachments Act (Cahill's R. S. 1933, ch. 11, secs. 14, 15) are similar, in substance, to sections 1297 and 1321 of the Missouri statutes. Section 14 of our statutes is entitled, ''Possession—Forthcoming bond''; and section 15 is entitled, ''Bond or recognizance to pay judgment.'' The type of bonds contemplated by section 1297 of the Missouri statutes and section 14 of our statutes is usually designated by the text writers as ''forthcoming bonds''; and the type of bonds contemplated by section 1321 of the Missouri statutes and section 15 of our statutes is usually designated as ''dissolution bonds'' or ''bonds to pay judgments.'' A forthcoming bond is conditioned upon the forthcoming of the property to answer such judgment as may be entered, and if the property be forthcoming no liability ensues. In the instant case the sheriff had possession of the goods under the attachment writ, and when the forthcoming bond was furnished he *released* the actual possession of the goods to Millard's, Inc., but, under the law, the *release* was conditional, the lien not being discharged and the suit continuing as one *in rem*. A dissolution bond binds the obligors to pay any judgment that may

be entered. Upon the giving of such bond the attachment is not released, technically speaking,—it is dissolved, the property is *restored* to the defendant, and the cause proceeds *in personam*. *A dissolution bond is much more onerous than a forthcoming bond.* The application describes the bond applied for as follows: "Nature of Bond applied for Release Attachment." It will be noticed that in the printed heading to the application for the bond, plaintiff, a bonding company, describes the various bonds that it furnishes, and it uses the words, "Release Attachment" to cover the two types of bonds by which a defendant may regain possession of his property seized under attachment. While in a technical sense the words, "Release Attachment" more accurately describe a forthcoming bond than they do a dissolution bond, nevertheless, in common parlance, both types of bonds procure the release to a defendant of the possession of the property seized,—under section 1297, conditionally; under section 1321, absolutely. The contention of defendant that the words, "Release Attachment" describe only a dissolution bond, is, in our judgment, without merit, especially when the words are interpreted in the light of the admitted facts. In his affidavit of merits defendant states that the purpose of the forthcoming bond furnished by plaintiff was to secure "the forthcoming of the property *released.*" Millard's, Inc. desired to regain possession of its goods and it applied for a bond that would effect a release of the goods seized under the writ. The application did not state that a dissolution bond was wanted. Heldman had charge of the proceedings under the forthcoming bond and he talked with defendant about the matter. The application and the indemnity agreement were drawn in defendant's office. He and Heldman were attorneys for Millard's, Inc. Defendant, if not Heldman, was an officer of Millard's, Inc., and the only reasonable

conclusion that can be drawn from the facts and circumstances in evidence is that they both knew at the time the kind of bond that was furnished to secure the release of the goods. If they thought that Krajci had used ambiguous words in describing the bond applied for they had full opportunity to remove the ambiguity. There is nothing in the record to show that during the years that elapsed between the restoration of the goods and the trial of the case either questioned in any way the type of bond furnished. While the contention that the bonding company furnished a less onerous bond than the two lawyers contemplated in their indemnity agreement and that therefore they are absolved from liability, is, under the facts, without legal merit, it is not entirely devoid of humor. We are this day filing an opinion in *United States Fidelity and Guaranty Company v. Albert Sabath,* 286 Ill. App. — (Abst.), wherein it appears that in July, 1928, six months after the signing of the indemnity agreement in the instant case, there was pending an attachment suit, in the circuit court of the City of St. Louis, Missouri, commenced by Pollock Clothing Company, against Millard's, Inc.; that certain goods of the latter, of the value of $3,150, were seized by the sheriff under the attachment writ; that Millard's, Inc. regained possession of the goods by furnishing a forthcoming bond executed by plaintiff, and that attached to the application for the bond was an indemnity agreement signed by defendant, Heldman and Neumann and witnessed by Krajci; that in that action Pollock Clothing Company secured a judgment against Millard's, Inc. but the goods were not forthcoming. In the application, the answer to the question, ''Nature of Bond applied for,'' is ''Release of Attachment.'' When sued upon the indemnity agreement, Sabath made a like defense to the one that he has interposed in the instant case. We are informed by defendant's brief that there was still another attachment suit in which plaintiff

furnished a forthcoming bond for Millard's, Inc. upon the execution to it by defendant, Heldman and Neumann of an indemnity agreement. If these lawyers had signed the instant indemnity agreement in good faith, honestly intending to live up to the obligations of the same, they would not resort to the subterfuge that the forthcoming bond furnished by plaintiff placed upon them a lesser burden than they intended to assume by their indemnity agreements and that they were therefore absolved from liability. The instant record proves the wisdom of the policy of the law— *not always enforced*—that attorneys should not be allowed to act as sureties or indemnitors for clients in legal proceedings.

Defendant also contends that plaintiff did not become liable on its forthcoming bond to pay the judgment rendered in the attachment suit, under the Missouri statutes, because "obligors are not liable on a forthcoming bond until there has been an order of the court for the delivery of the property," and "plaintiff in an attachment suit cannot maintain an action on a forthcoming bond until it is assigned to him," and defendant argues that there was no evidence to show "when or where the St. Louis court ordered the goods to be forthcoming or for how much they were appraised nor was there any evidence of an assignment of the bond by the Sheriff to the plaintiff nor an order of the Court to pay the same." It is a sufficient answer to this contention to say that the payment of $3,350 by plaintiff to Samuel Stores, Inc. was made with the knowledge, consent and approval of defendant. Mr. Hudson, defendant's counsel and his long time office associate, represented Millard's, Inc. in the attachment case in St. Louis, and while defendant did not answer plaintiff's letter of June 30, 1930, it is evident that he took an active part in that suit. He testified that Krajci may have represented him in the negotiations for a settlement between plaintiff and Samuel

Stores, Inc. Mr. Hudson testified that Samuel Stores, Inc. and its attorneys were unwilling to make an assignment of the judgment to plaintiff unless defendant "agreed to it or consented to it." Plaintiff was unwilling to pay Samuel Stores, Inc. $3,350 for an assignment of the judgment until it was assured that no writ of error or appeal would be prosecuted from the judgment. From defendant's letter of September 22, 1930, as well as other circumstances, it is evident that all of the interested parties regarded him as a factor in the litigation, and as defendant approved the assignment from Samuel Stores, Inc. to plaintiff, which cost the latter $3,350, he is in no position to now raise the instant points. Even if he were, there is no merit in his contentions.

By anything that we have said in this opinion we did not intend to intimate that had the application contemplated a dissolution bond only, defendant, an indemnitor, would have been absolved from liability. Whether or not a defendant in a case of that kind would have the right to raise such point, where it appears that the bond accomplished the purpose desired by the applicant and the indemnitor, and its terms were less burdensome to the indemnitor than he agreed to assume by his indemnity agreement, is not before us for consideration.

We hold that the trial court erred in finding for defendant, and the judgment of the circuit court of Cook county is reversed and judgment will be entered here in favor of plaintiff and against defendant for the sum of $4,317.30, which includes $3,350 principal, and interest thereon at the rate of five per cent per annum from September 24, 1930.

*Judgment reversed and judgment here in favor of plaintiff and against defendant for the sum of $4,317.30.*

SULLIVAN, P. J., and FRIEND, J., concur.